UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANNA SISOUNTHONE,<br><br>Petitioner,<br><br>v.<br><br>ROBERT NEUSCHMID, Warden,<br><br>Respondent. | No. 2:18-cv-03181 DAD AC<br><br>FINDINGS AND RECOMMENDATIONS |

Petitioner is a California state prisoner proceeding pro se with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed in 2018 and challenges a 2014 robbery conviction. ECF No. 1. Following prior litigation of a motion to dismiss, and then a stay pending petitioner's appeal of resentencing in state court, the action now proceeds on a single claim of constitutional error at trial. See ECF No. 38. Respondent has answered. ECF No. 44. Petitioner did not file a reply.

BACKGROUND

I.   Proceedings in the Trial Court

   A.   Preliminary Proceedings

Petitioner was charged in Sacramento County with multiple counts arising from the armed robberies of three convenience stores. The charges as to each incident were as follows:

///

1

First Robbery: Cigaretteland

- Count One: second degree robbery of Balli Birring (Cal. Pen. Code, § 211), with discharge of a firearm (§ 12022.53(c));
- Count Two: assault with a firearm on Jesse Mejia (§ 245(a)(2)), with personal use of a firearm (§§ 1203.06(a)(1), 12022.5(a)(1));
- Count Three: false imprisonment of Jesse Mejia (§ 236), with personal use of a firearm (§§ 1203.06(a)(1), 12022.5(a)(1)); and
- Count Four: false imprisonment of Balli Birring (§ 236), with personal use of a firearm (§§ 1203.06(a)(1), 12022.5(a)(1)).

Second Robbery: Bill's Liquor

- Count Five: second degree robbery of Shari Mayer (Cal. Pen. Code, § 211), with personal use of a firearm (§ 12022.53(b)); and
- Count Six: second degree robbery of Vickie LaFollette (Pen. Code, § 211), with personal use of a firearm (§ 12022.53(b)).

Attempted Third Robbery: Better Trade Market

- Count Seven: attempted second degree robbery of Baldev Dhillon (§§ 211, 664), with personal use of a firearm (§ 12022.53(b)); and
- Count Eight: attempted second degree robbery of Rajwant Dhillon (§§ 211, 664), with personal use of a firearm (§ 12022.53(b)).

CT 79-85[1] (ECF No. 43-1 at 83-89). The Information also alleged three prior convictions. Id.

B. The Evidence Presented at Trial

The jury heard evidence of the following facts.[2] On the evening of January 19, 2012, a man wearing a clown mask and armed with a gun entered Cigaretteland. Balli Birring was working there, while Jesse Mejia was visiting the store. The masked man ordered Birring to give him the money from the cash register, which Birring did. The masked man turned back toward

---

[1] "CT" refers to the Clerk's Transcript on Appeal, which is docketed at ECF No. 43-1.
[2] This summary is adapted from the opinion of the California Court of Appeal, ECF No. 43-8 at 2-3.

2

Mejia and fired a shot, shattering a glass cooler next to Mejia. The man left the store with the money, firing the gun at least once more as he left. The final shot did not do any damage.

Later that night, the armed man in the clown mask entered Bill's Liquor. Shari Mayer and Vickie LaFollette were working in store at the time. The masked man demanded the money, pointing the gun at both women. He fired the gun towards the side of Mayer's leg. The man took the money and left. No bullet or damage was found from a gunshot.

Two nights later, on January 21, 2012, a man wearing the same clown mask and armed with a gun entered Better Trade Market. In the market at the time were, among others, the owners Bikram and Rajwant Dhillon and Bikram's father Baldev Dhillon, who was visiting the store. The masked man pointed the gun toward the counter area and demanded the money. Within moments, the man pointed the gun at Baldev, and Baldev heard a metallic click as if the robber had tried to shoot him. Baldev punched the man and tried unsuccessfully to take the gun. The man began to flee, and Baldev grabbed the mask off his head as he left the store.

Some of the witnesses thought the robber's accent sounded Hispanic but others thought he might be Asian or a Pacific Islander. After petitioner was identified as suspect, a search of his car and his home revealed clothing worn in the robberies and other crimes. DNA on the mask was from more than one person, including petitioner.

### C. Outcome

On August 13, 2014, a jury found petitioner guilty on all counts. Multiple firearm enhancements and a prior conviction were found to be true. CT 152-155 (ECF No. 43-1 at 156-159). On October 23, 2014, petitioner was sentenced to fifty-eight years, four months in prison. CT 10 (ECF No. 43-1 at 15).

## II. Initial State Post-Conviction Proceedings

Petitioner appealed his conviction and sentence. On October 30, 2017, the California Court of Appeal ruled that the trial court had erred by failing to obtain petitioner's waiver of a jury trial as to a new prior conviction allegation. ECF No. 43-8 at 19-22. All of petitioner's other allegations of error were determined to be without merit. Id. The judgment was accordingly affirmed as modified. Id. at 22-23.

1         Petitioner sought review in the California Supreme Court.  ECF No. 43-9.  On January 31,
2  2018, that court granted the petition and transferred the case to the California Court of Appeal,
3  directing it to vacate its decision and reconsider sentencing issues in light of Senate Bill 620.
4  ECF No. 43-10.³  The Court of Appeal in turn remanded the case to the superior court, for the
5  exercise of its discretion under the new law.  ECF No. 43-13.  On resentencing, the superior court
6  re-imposed the original sentence.  ECF No. 43-16 (amended abstract of judgment filed July 27,
7  2018).
8         On or around May 17, 2018, petitioner filed a second petition for review in the California
9  Supreme Court.  ECF No. 43-14.  This petition sought review of the Court of Appeal's original
10  decision insofar as it had rejected petitioner's claims of trial error.  Id.  The petition was denied
11  without comment or citation.  ECF No. 43-15.

    III.    Federal Habeas

13         The federal petition was docketed on December 10, 2018.  ECF No. 1.  It presented four
14  grounds for relief:  (1) imposition of consecutive sentence violated California Penal Code section
15  654's prohibition against multiple punishment; (2) the prosecutor's questioning of witnesses and
16  use of surveillance videos at trial violated due process by suggesting petitioner's identification;
17  (3) trial counsel was ineffective assistance  in failing to request a lineup and not objecting to the
18  prosecutor's improper expert opinion about DNA evidence; and (4) the prosecutor committed
19  misconduct and violated petitioner's confrontation rights by offering expert opinion about DNA
20  evidence that constituted hearsay.  Id. at 4-5.
21         Respondent moved to dismiss the petition as a "mixed petition," arguing that Claims One,
22  Three and Four were unexhausted.  ECF No. 10.  That motion was granted in part and denied in
23  part, and it was ordered that the case proceed on Claim Two only.  ECF No. 26 (Findings and
24  Recommendations); ECF No. 31 (order adopting Findings and Recommendations).
25         Petitioner thereafter informed this court of ongoing state appellate review of resentencing
26  issues, and sought abstention under Younger v. Harris, cite.  ECF No. 32.  The motion for

---

³ That legislation had granted the courts discretion to strike firearms enhancements.  See ECF
No. 43-13 at 2.

4

1  Younger abstention was denied, but the court exercised its discretion to administratively stay the
2  case pending resolution of petitioner's appeal from resentencing. ECF No. 35 (Findings and
3  Recommendations); ECF No. 36 (order adopting Findings and Recommendations).
4      On November 27, 2024, petitioner notified the court that his state appellate proceedings
5  had concluded. ECF No. 37. Respondent was ordered to file a response to Claim Two of the
6  petition (ECF No. 38), and did so on January 28, 2025 (ECF No. 44).

STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The statute applies whenever the state court has denied a federal claim on its merits, whether or not the state court explained its reasons. Harrington v. Richter, 562 U.S. 86, 99 (2011). State court rejection of a federal claim will be presumed to have been on the merits absent any indication or state-law procedural principles to the contrary. Id. (citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis)). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 99-100.

The phrase "clearly established Federal law" in § 2254(d)(1) refers to the "governing legal principle or principles" previously articulated by the Supreme Court. Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). Only Supreme Court precedent may constitute "clearly established Federal law," but courts may look to circuit law "to ascertain whether…the particular point in

issue is clearly established by Supreme Court precedent." Marshall v. Rodgers, 569 U.S. 58, 64 (2013).

A state court decision is "contrary to" clearly established federal law if the decision "contradicts the governing law set forth in [the Supreme Court's] cases." Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision "unreasonably applies" federal law "if the state court identifies the correct rule from [the Supreme Court's] cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407-08. It is not enough that the state court was incorrect in the view of the federal habeas court; the state court decision must be objectively unreasonable. Wiggins v. Smith, 539 U.S. 510, 520-21 (2003).

Review under § 2254(d) is limited to the record that was before the state court. Cullen v. Pinholster, 563 U.S. 170, 180-181 (2011). The question at this stage is whether the state court reasonably applied clearly established federal law to the facts before it. Id. at 181-182. In other words, the focus of the § 2254(d) inquiry is "on what a state court knew and did." Id. at 182. Where the state court's adjudication is set forth in a reasoned opinion, §2254(d)(1) review is confined to "the state court's actual reasoning" and "actual analysis." Frantz v. Hazey, 533 F.3d 724, 738 (9th Cir. 2008) (en banc). A different rule applies where the state court rejects claims summarily, without a reasoned opinion. In Richter, supra, the Supreme Court held that when a state court denies a claim on the merits but without a reasoned opinion, the federal habeas court must determine what arguments or theories may have supported the state court's decision, and subject those arguments or theories to § 2254(d) scrutiny. Richter, 562 U.S. at 102.

## DISCUSSION

### I. Petitioner's Allegations and Pertinent State Court Record

Claim Two alleges that petitioner's rights were violated by "unnecessarily suggestive procedures that lead [sic] to an irreparably mistaken identification." ECF No. 1 at 4. Specifically, petitioner challenges the questioning of victim witnesses by the prosecutor, and the prosecutor's introduction and use of surveillance video footage. Id. at 19.

As for the allegedly suggestive questioning of witnesses, petitioner identifies and quotes two specific exchanges that occurred as the witnesses were being questioned about what they saw

on the surveillance videos. The first involves the direct examination of Jesse Mejia:

> [Prosecutor:] Can you describe what the clown-masked man is — has on his shoulder? Can you see that?
>
> [Jesse Mejia:] It looks like a bag.

ECF No. 1 at 19 (corrected); see also 1 RT 159 (ECF No. 43-3 at 176).[4]

The second instance occurred during the questioning of Shari Mayer:

> [Prosecutor:] Well, look at—does he also have—like he's carrying something?
>
> [Shari Mayer:] I—don't know. I mean—
>
> [Prosecutor:] Well, I can go forward little bit, see if you recognize what he's holding over his shoulder.
>
> [Shari Mayer:] A backpack.
>
> [Prosecutor:] Look like—
>
> [Shari Mayer:] Maybe.
>
> [Prosecutor:] Do you remember it?
>
> [Shari Mayer:] I don't. No, I don't. Sorry.
>
> [Prosecutor:] That's okay. . . .

ECF No. 1 at 19; see also 1 RT at 238 (ECF No. 43-3 at 255).[5]

Petitioner alleges that the prosecutor's use of the video evidence "served to taint the jury based on suspect in the video footage was not conclusively identified, and the surveillance image is unclear." ECF No. 1 at 19. Petitioner also alleges that the prosecutor, in effect, testified to her own opinion, in violation of the rules of evidence. Id.

II.     The Clearly Established Federal Law

In reviewing prosecutorial misconduct claims, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a

---

[4] "RT" refers to the Reporter's Transcript on Appeal, which is in two volumes at ECF Nos. 43-3 and 43-4.
[5] On appeal, petitioner relied on a significantly more extensive set of questions and answers. See ECF No. 43-5 (Appellant's Opening Brief) at 27-35. Even if the federal claim is construed as incorporating the entire factual predicate of the issue presented to the state courts, the discussion and conclusions that follow would be unchanged.

denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotations omitted). "To constitute a due process violation, the prosecutorial misconduct must be of sufficient significance to result in the denial of the defendant's right to a fair trial." Greer v. Miller, 483 U.S. 756, 765 (1987). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." Smith v. Phillips, 455 U.S. 209, 219 (1982).

III.   The State Court's Ruling

This claim was raised on direct appeal. Because the California Supreme Court denied discretionary review, the opinion of the California Court of Appeal constitutes the last reasoned decision on the merits and is the subject of habeas review in this court. See Ylst v. Nunnemaker, 501 U.S. 797 (1991); Ortiz v. Yates, 704 F.3d 1026, 1034 (9th Cir. 2012).

The California Court of Appeal ruled as follows:

> *Alleged Prosecutorial Misconduct re Lay Opinions*
>
> In the alternative, defendant contends that the prosecutor committed prejudicial misconduct by soliciting the assertedly inadmissible lay opinions during the viewing of the surveillance videos. Again for the purpose of argument we assume the lay opinions were inadmissible. Nonetheless, this prosecutorial misconduct contention was forfeited because defendant did not object to admission of lay opinions. Also, even if we reach the issue under the argument that failing to object to the asserted prosecutorial misconduct constituted ineffective assistance of counsel, defendant still has not established prejudice.
>
> Generally, while it may be argued on appeal that a prosecutor committed misconduct by intentionally soliciting inadmissible opinion testimony, failure to object to the questioning in the trial court forfeits appellate review. (*People v. Hinton* (2006) 37 Cal.4th 839, 869; Evid. Code, § 353, subd. (a).) There was no objection in this case.
>
> Defendant argues we should ignore the failure to object because this case was closely balanced and the acts of asserted misconduct contributed materially to the verdict. (See *People v. Lambert* (1975) 52 Cal.App.3d 905, 908.) While we disagree that this case was closely balanced, we need not provide an analysis of the strength of the prosecution's case because there is no showing that the asserted misconduct contributed materially to the verdict. As we observed with respect to his ineffective assistance of counsel argument, defendant makes no attempt to establish that the jury would have drawn different conclusions from the surveillance videos if there had been no lay opinion concerning what was on those videos. The

8

> jurors saw for themselves what the witnesses purported to describe.
>
> Finally, defendant argues that we should ignore the forfeiture problem because trial counsel provided constitutionally deficient representation by failing to object to the asserted misconduct. The analysis provided in part I applies equally here because the evidence relevant to this contention—meaning the assertedly inadmissible lay opinions— is the same. Since defendant cannot establish prejudice, his ineffective assistance of counsel argument is without merit. (*Strickland v. Washington, supra*, 466 U.S. at pp. 687-688, 697.)

ECF No. 43-8 at 9-10.

IV. Procedural Default

Respondent argues that Claim Two is procedurally defaulted because the appellate court held it was forfeited by the failure of trial counsel to object. ECF No. 8-9. As a general rule, a federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment. Coleman v. Thompson, 501 U.S. 722, 729 (1991); Beard v. Kindler, 558 U.S. 53, 55 (2009). The fact that the state court alternatively ruled on the merits does not erase the effect of a procedural bar. Harris v. Reed, 489 U.S. 255, 264 n.10 (1989). The Ninth Circuit has recognized that California's contemporaneous objection rule is an independent and adequate state law ground for rejecting a claim that will support default in federal court. See Zapata v. Vasquez, 788 F.3d 1106, 1111-12 (9th Cir. 2015); Fairbank v. Ayers, 650 F.3d 1243, 1256-57 (9th Cir. 2011).

Default can be excused on a showing of cause and prejudice, however, and ineffective assistance of counsel is a cognizable "cause." See Edwards v. Carpenter, 529 U.S. 446, 451 (2000). Here the federal petition is liberally sprinkled with allegations of ineffective assistance. Even if the court were to construe the petition as asserting ineffective assistance as cause for default, however, the undersigned would elect to bypass procedural default issue. See Lambrix v. Singletary, 520 U.S. 518, 525 (1997) (federal habeas court may bypass a procedural default to reach the merits of a non-meritorious claim); Franklin v. Johnson, 290 F.3d 1223, 1232 (9th Cir. 2002) (same).

////

V. <u>Objective Reasonableness Under § 2254(d)</u>

The state court held that petitioner had identified no prejudice from the lay witness testimony that he accuses the prosecutor of impermissibly eliciting. There was nothing objectively unreasonable about that finding.[6] The jurors watched the surveillance videos and were able to determine for themselves what the footage did and did not show, including the consistency of petitioner's physique with that of the robber. Moreover, extensive evidence other than the video footage supported the jury's conclusion as to identity. Petitioner's DNA matched that of the "major contributor" to the DNA swab taken from the mouth area of the robber's mask. That the DNA of others was also found on the mask does not undermine the inculpatory value of that evidence as to petitioner. Petitioner spoke with a Laotian accent, and the robber spoke with an accent that the witnesses could not confidently or accurately identify. Clothing worn in the robberies and other crimes was found in petitioner's car and home. On arrest, petitioner had an injury to his forehead; the robber hit his forehead on the door jamb while fleeing the Better Trade Market. Rajwant Dhillon, who saw the back of the robber's head and his profile after the mask was pulled off, identified petitioner as the perpetrator from a live lineup. On this state of the evidence, the witness testimony regarding the video footage is highly unlikely to have affected the verdict. Moreover, the undersigned is unaware of any U.S. Supreme Court precedent finding prejudice on similar or analogous facts. Accordingly, the state court's decision was reasonable and § 2254(d) precludes federal relief.

Even if reviewed de novo, without the deference that AEDPA requires, this claim could not support relief. Due process is violated only where a prosecutor's misconduct renders the entire proceeding fundamentally unfair. See <u>Darden</u>, 477 U.S. at 181. Fairness is evaluated in light of the entire record of the proceeding. <u>Hein v. Sullivan</u>, 601 F.3d 897, 905 n.4 (9th Cir. 2010). In this case all the requirements of a fair trial were met. The identification issue was fiercely contested under the rules of our adversary system. The defense had a full opportunity to cross-examine all eye-witnesses, and did so vigorously. Defense counsel argued to the jury that

---

[6] And as the state court noted, that finding applies equally to any ineffective assistance of defense counsel in failing to object.

10

there was reasonable doubt as to the identity of the robber, and the jury was instructed correctly as to the evaluation of witness testimony and other evidence. When this record is considered as a whole, the basic fairness of petitioner's trial is apparent. Accordingly, any error in the prosecutor's questioning of the witnesses fell short of a constitutional violation.

## CONCLUSION

For all the reasons explained above, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. §636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. See 28 U.S.C. § 2253(c)(2). Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: June 30, 2025

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE